# Richmond.

## Holleran v. Meisel and Another.

### February 14, 1895.

1. BILL OF EXCEPTIONS—*Office of—Allegation of Error—Evidence—Several Objections in One Bill.*—It is the office of a bill of exceptions to set forth a specific and definite allegation of error, and so much of the evidence as is necessary to a clear apprehension of the propriety or impropriety of the ruling made by the court, and if it fails to do this the exception will prove unavailing. Two or more objections may be saved by the same bill, provided they are distinctly set forth with the necessary circumstantiality, and not confused with one another. But the better practice is to take a separate bill for each objection.

2. RES JUDICATA—*Construction of Records by Court of Appeals.*—When this court has construed the legal character and effect of certified copies of entries in certain public records, which involves the construction of the records themselves, such construction is *res judicata* in this court and all the courts of this State, and an instruction which gives to such entries any other or greater effect is erroneous.

3. EVIDENCE—*Books of Register of Land Office—Patents—Colonial Records.*—Entries in the books of the office of the Register of Land Office, labelled "Patents," without signature or seal, are not patents, nor grants, but are admissible in evidence as "colonial records," tending to prove that proceedings had been taken looking to the execution and issuing of a grant, to be followed, if possible, by evidence tending to show that the grant so contemplated and begun was actually executed, issued, and delivered.

4. EJECTMENT—*Patent from Commonwealth—Previous Grants—Adversary Possession.*—In an action of ejectment, a valid patent from the Commonwealth to the plaintiff is *prima facie* evidence of title in the plaintiff, with the right of immediate actual possession, and can only be defeated by an adversary possession under color or claim of title for the statutory period, or by showing a previous valid grant by the Commonwealth to the defendant or to a third person, or a state of facts from which such patent may be presumed.

5. EJECTMENT—*Boundaries—Expert Testimony.*—In an action of ejectment, the question whether the land in controversy is within the boundaries claimed by the plaintiff's declaration is a question of fact upon which witnesses may state their knowledge, but upon which experts may not express opinions. On such question expert testimony is not admissible.

Error to a judgment of the Circuit Court of the city of Richmond, rendered November 22, 1892, in an action of ejectment, wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Reversed.*

The opinion states the case.

*John Howard*, for the plaintiff in error.

*W. W. & B. T. Crump*, for the defendants in error.

RIELY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of the city of Richmond, in an action of ejectment, and involves the title to a piece of land, containing three and eighty-four hundreths acres, in the county of Henrico, near the said city. The suit has been here before on a writ of error to a judgment of the said court, and the decision of this court is reported in 87 Va. 398.

The plaintiff, James Holleran, claimed title to the land under a grant made to him by the Commonwealth bearing date on the 12th day of February, 1887; and the defendants, Phillip Meisel, Sr., and Phillip Meisel, Jr., endeavored to show an outstanding title in a third person under one Joshua R. Stapps, to whom they claimed that the land had been patented by the colonial government in 1687. On the trial, a verdict was rendered by the jury for the defendants, and judgment entered by the court according to the verdict. To

this judgment a writ of error was awarded by one of the judges of this court.

Several bills of exception were taken by the plaintiff to the rulings of the court made during the progress of the trial; and also to the refusal of the court, after the verdict was renderd, to grant him a new trial, in which last bill of exception all the evidence, and not the facts, was certified.

The rulings of the court, to which exceptions were taken by the plaintiff during the progress of the trial, and which are embodied in the bills of exception, was as to the admission of documentary and other evidence tending to prove that a patent for the land in controversy had been issued to Joshua R. Stapps previous to the grant to James Holleran. In that view, the evidence excepted to, so far as we are able to judge from the bills of exception, was admissable. It is the office of a bill of exception to set forth a specific and definite allegation of error, and so much of the evidence as is necessary to a clear apprehension of the propriety or impropriety of the ruling made by the court, and if it fails to do this, the exception will prove unavailing. 4 Minor's Institutes, Pt. I, p. 827, and 1 Barton's Law Prac. 664. The bills in this case are not separate and distinct, but each seems to contain a number of "objections and exceptions," and they are so intermingled as to create confusion and prevent a proper understanding of them. It is, therefore, doubtful whether the exceptions could be properly disposed of; and as it is unnecessary to the decision of the case to do so, it will not be attempted. While this court held in *Brown* v. *Hall*, 85 Va. 146, that more than one objection may be certified in the same bill, provided that each objection, where there is more than one, "is therein distinctly set forth with the necessary circumstantiality and not confused with others therein contained," it is also added that, as a general rule, the better practice is to take separate bills of exception, as least likely to lead to confusion and uncertainty; which

expression of opinion we would emphasize, especially in view of the contrary practice adopted in this case.

The plaintiff, after the evidence was all in, asked the court to give to the jury eight instructions, and the defendants asked it to give two instructions. The court rejected all of the instructions asked for by the plaintiff, and the second instruction asked for by the defendants, and gave the first of the instructions asked for by the defendants, and two instructions of its own in lieu of those rejected. To the action of the court in refusing the instructions asked for by the plaintiff, and in giving the first instruction asked for by the defendants, and the two instructions of its own, the plaintiff excepted.

The first instruction asked for by the defendants, and which was given by the court, accurately propounded the law, and the court committed no error in giving it.

It is only necessary in the disposition of the writ of error awarded in this case, after what has been said, to notice the first instruction given by the court in lieu of those rejected. It is as follows:

"The court instructs the jury that if they believe from the evidence that the land in controversy was embraced within the lines of Stapp's patent of October 21, 1687, and they shall further believe that the said alleged patent was executed and delivered by the proper authorities of the Colonial Government of Virginia, and that possession was held by Stapp or parties claiming under him title derived from such alleged patent, they are instructed that the land claimed was not subject to grant by the Commonwealth when the plaintiff's patent was issued, and such patent being therefore void, they should find for the defendant. But if the jury shall not so believe, they are instructed that the patent exhibited by the plaintiff in evidence passes to him the title of the Commonwealth, and they shall find for the plaintiff. That the opinions of the witnesses, Carrington and Redd, are not proper evidence to

be regarded by the jury, except so far as the jury may believe them to be correct inferences from the evidence in the case.''

On the trial, at which the judgment was rendered, from which the former writ of error was taken, the defendants, in support of their contention of a prior grant by the Commonwealth of the land in controversy, offered in evidence a certified copy of an entry or memorandum contained in one of the books in the office of the Register of the Land Office, labelled "Patents," which entry was without seal or signature, and claimed that such entry or memorandum was a patent from the government to one Joshua R. Stapps for the said land; and that therefore the said land was not thereafter open to further grant by the Commonwealth to James Holleran as waste and unappropriated, and consequently his patent was void. On that trial, the Circuit Court did not leave to the jury the question whether upon the evidence a patent had been issued to Joshua R. Stapps, but in an instruction to the jury, which was duly excepted to, assumed and instructed the jury, in effect, that the entry or memorandum, of which the copy aforesaid was given in evidence by the defendants, was in itself a patent. The legal character and effect of the entry or memorandum, so relied on by the defendants to defeat the claim of the plaintiff, was thus directly and necessarily drawn in question on the former hearing, and this court then expressly pronounced upon it. It decided that standing by itself, it was a nullity as a grant, and only admissible in evidence as "a memorandum from the Colonial Records, tending to prove that proceedings had been taken, looking to an execution and issuing of a grant, to be followed up, if possible, by evidence tending to show that the grant so contemplated and begun was actually executed, issued, and delivered." This court, in consequence of such erroneous instruction, reversed the judgment of the Circuit Court, and granted the plaintiff a new trial. It thus appears that this court then construed the

entry or memorandum in the records of the Colonial Government in the Land Office, and held that it was not a patent or grant, and was therefore inoperative in itself to take the land out of the category of waste and unappropriated land. When such decision was made and certified to the Circuit Court, the legal character and effect of said entry or memorandum was henceforth *res adjudicata*, and not further open for question or reconsideration by the Circuit Court, or even by this court. We think that the construction thus placed on it was correct; but whether correct or not, it is to that extent the law of this case. It was the mandate of this court to the lower court, and the paper or entry was henceforth not to be treated as a grant or patent. This is well settled by the decisions of this court, and of other courts of highest authority. *Campbell's Ex'ors* v. *Campbell's Ex'ors*, 22 Gratt. 649; *Chahoon's case*, 21 Gratt. 822; *Turner's Adm'r* v. *Staples et als.* 86 Va. 300; *Stuart & Palmer* v. *Heiskell's trustee*, Id. 191; *Supervisors* v. *Kennicott*, 94 U. S. 498; *Tyler* v. *Maguire*, 17 Wall. 284; *Clark* v. *Keith*, 106 U. S. 464; *Chaffin* v. *Taylor*, 116 U. S. 572; *Wilson ex'r* v. *Fridenberg*, 21 Fla. 386; *West et als.* v. *Brashear*, 14 Peters, 51; and *The Star Wagon Co.* v. *Swezy, Lebo & Co.*, 63 Iowa, 520.

On the new trial granted by this court, when the judgment and verdict were again in favor of the defendants, the copy of said entry or memorandum was not again offered in evidence, but Vol. 7, of the books of "Patents" was itself introduced, and the entry or memorandum therein, from which the copy used in the former trial was taken, read to the jury, and witnesses were introduced to prove that these books were the records handed down from the Colonial Government, and contained the records of colonial grants of waste and unappropriated lands. No other paper or document was exhibited to the jury, or offered in evidence as a grant or patent to Joshua R. Stapps; and so the instruction of the court, quoted above,

had reference only to the entry in Vol. 7, of the books of
"Patents." The original entry or memoradum was, of
course, equally with the copy offered on the former trial,
without signature or seal.

The construction of the copy and determination of its legal
effect by this court was at the same time the construction of
the original, in which the defects of the copy inhered. The
original entry or nemorandum in Vol. 7, of the books of
"Patents," although these books are treated as the records of
colonial grants of waste and unappropriated lands, was as
directly the subject of the decision of this court on the former
hearing as the copy, and its construction and effect equally
with the copy *res adjudicata.* It was, therefore, error in the
Circuit Court to give it a different construction, or any greater
weight or effect.

The instruction given by the court, equally with the one
pronounced on the former hearing to be erroneous, in effect
instructed the jury that the entry or memorandum in the book
of "Patents" was a patent or grant to Joshua R. Stapps.
The first part of the instruction assumes expressly that a
patent was issued to Stapps on the 21st of October, 1687, and
in doing so, it directly disregards the mandate of this court.
In subsequent parts of the instruction, it is referred to as the
"alleged patent" to Joshua R. Stapps; and it may be inferred
from this, that the court did not intend to instruct that it was
a patent; but if so, the instruction was calculated to mislead
the jury, and for that reason, was erroneous, and the effect
the same. For this error the judgment of the Circuit Court
must be reversed.

By his patent of the 12th of February, 1887, the plaintiff
had a *prima facie* title to the land in controversy, with the
right of immediate actual possession, and could only be defeated
by an adversary possession under color or claim of title for the
statutory period, or by showing a previous valid grant by the

Commonwealth to the defendant or to a third person, or a state of facts from which such patent might be presumed. The entry in Vol. 7 of the books of "Patents," which books contain the records of the Colonial Government previous to the revolution, was admissible as evidence tending to show, after such great lapse of time and the improbability that at this late day there still existed waste and unappropriated land so near to the seat of the State government, that such patent had issued, and to furnish, along with other proper and sufficient evidence, facts and circumstances from which its existence should be presumed. But this is not a matter for the court to decide, but to be left by it, under proper instructions, to the jury.

The latter part of the instruction is also objectionable, in instructing the jury that the opinions of the witnesses, Carrington and Redd, are proper evidence, and to be regarded by the jury so far as the jury may believe them to be correct inferences from the evidence in the case. These witnesses were introduced to prove that the alleged patent to Stapps embraced the land in controversy; and while admitting that they could not identify it from the entries or memoranda in the books of "Patents," deeds, and other documentary evidence, they gave it as their opinion that it included the land in controversy. This was not knowledge. It was not the statement of a fact, but merely an opinion. Even if Carrington, who was an examiner of titles, and Redd, who was county surveyor of Henrico county, were experts, this was not a case in which expert testimony was admissible. It was perfectly proper for them, or either of them, to examine the deeds and other documentary evidence given in before the jury and to state from their knowledge, whether the land in controversy was within the boundaries of the entry purporting to be a memorandum of the issue of a patent to Joshua R. Stapps, but not to give merely their opinions upon the subject. Such mode of

Opinion.

identification was inadmissible under the law, and the instruction to the jury that they might regard such opinions as proper evidence to that end, if they believed them to be correct inferences from the evidence in the case, was erroneous.

As the case must go back to the Circuit Court for a new trial, we do not deem it proper to discuss the evidence certified by the court in overruling the motion of the plaintiff for a new trial.

For the error of the court in giving said instruction, and in overruling the motion for a new trial on account of such erroneous instruction, the judgment complained of must be reversed, the verdict set aside, and the case remanded for a new trial, upon which, if the evidence be substantially the same, and instructions be asked for, they shall conform to the views expressed in the foregoing opinion.

REVERSED.